The following facts constitute the case:
The plaintiff, Christman, was the guardian of his brother, Moses Christman, and, as a part of his estate, had in his hands the bond of Thomas B. Wright, one of the defendants, to which Armstrong and Martin, the other defendants, are sureties. At November Term, 1838, the said bond was by the plaintiff given up to the defendant, Wright, who, at the same term, executed and delivered to the plaintiff his bond for the amount of the first, without any surety, but executed a deed of trust for a tract of land called Mount Airy, to one Jackson Williams, to secure to the said Christman the payment of the said last-mentioned bond. At the time this second bond and the deed of trust were executed, several judgments had been obtained in the County Court of Surry, of which Armstrong, the defendant, was clerk, and of the existence of which he was apprised, and under these, or some of them, Mount Airy was sold. Other judgments to a very large amount were obtained in other courts against the said Wright. At the time this arrangement took place, Wright was in the possession of a very large property, which upon, sale produced upwards of $40,000, all of which was sold, and left Wright entirely insolvent. No part of the property of Wright was appropriated to the payment of the plaintiff's debt or any part of it, nor did he make any effort beyond taking the deed of trust, to subject any portion of it to the payment of his claim. Moses Christman is dead, and the other plaintiff, Hayne, is his administrator. The plaintiffs charge, that Christman was induced to give up the bond, which he held upon the defendant, Wright, and to (550) make the arrangement he did in November, 1838, through the fraud of the defendants, particularly of the defendant Armstrong; that he and Martin, becoming acquainted with the heavy responsibilities of the defendant, Wright, and being alarmed for their own safety, conspired together with Wright to induce him to give up the bond, in which they were sureties, and take the single bond of Wright, secured by the deed of trust; that Armstrong knew of the judgments obtained in Stokes and Rockingham, and also those in the county of Surry, and that the liens of the latter would overreach the deed of trust, and render it of no account to him; and Armstrong first proposed the arrangement to him, and, after much persuasion, he was induced to accede to it, from his entire confidence in the integrity of Armstrong, and of his knowledge of business, be himself being young and not much acquainted with business. *Page 434 
and he asks that the old bond may be set up, and Armstrong be decreed to pay it, Martin being insolvent.
The defendants, Armstrong and Wright, deny positively that the arrangement was made by their advice or at their suggestion. The defendant, Armstrong, alleges that, until Friday morning of Surry County Court, he had not any idea that Wright was at all embarrassed; that he was a man of large property. At that court judgments to the amount of $5000 were entered up against him, and Wright told him he expected to be pressed and sued, as well for his own debts as for those where he was surety, and that he must tell Christman to bring his bond to court, and they, the obligors, must confess a judgment on it to Christman; that he accordingly did so inform Christman, who appeared not inclined to take a judgment, and, after some time, himself proposed, in the place of the judgment, to take a deed of trust on the Mount Airy estate. To this, he, Armstrong, positively refused his assent, observing, if he was to be held bound for the debt, a judgment must at that court be confessed by them all; that Wright was at first unwilling to give the trust, but yielded to the wishes of the plaintiff, Christman, who appeared to prefer the security of the trust, to the personal security of the defendants, Armstrong (551) and Martin; and accordingly, at his instance, the arrangement was made, and the old bond surrendered up; that the Mount Airy estate was worth at least $10000. He denies that he had any knowledge at that time of the Stokes and Rockingham judgments against the defendant, Wright; admits he knew of those obtained in the County Court of Surry; and avers that, to his belief, the plaintiff, Christman, also knew of their existence, for one of them was obtained by him; but he avers that he had the utmost confidence in the ability of the defendant, Wright, to pay them out of the money he believed he had on hand, and out of the debts due him. He alleges, that if the plaintiff, Christman, had lost his debt, it is by his own negligence; as, although the Surry judgments overreached the trust, yet he could easily have had the executions issuing on them levied on other property of Thomas B. Wright, of which there was an abundance, whereby the Mount Airy estate would have been freed from the lien and rendered available to discharge his claim. Whereas, he suffered those executions to be levied on it and made no effort to relieve it, and suffered it to be sold; and the balance of Wright's property was sold to discharge judgments subsequently obtained. He further states, that in most of the judgments obtained at the November Term of Surry County Court, the defendant, Wright, was but a *Page 435 
surety to principals, who were themselves able to pay, or, in cases where he was co-surety with others, they were also able to pay; and that he was well justified in believing that Wright would be able to discharge his liability without any sale of property. He denies that it was at his suggestion, or that of Wright, that the arrangement complained of was made, or that either of them used any persuasion to induce the plaintiff to enter into it, or that he was guilty of any concealment whatever.
The answer of the defendant, Wright, is very much in accordance with Armstrong's. He states, that, becoming uneasy about his circumstances, he was anxious to secure his sureties in the bond to Christman, and told the plaintiff and his sureties, that, in order to secure them, they must all confess judgment on the bond; and that he explained to Christman (552) why he wished it, and why it would be better for him, Christman, to take the judgment than the trust, as he would thereby bind the property to all of them. But that Christman preferred the trust on the Mount Airy estate, taking his bond without a surety; that at the time the arrangement was made, he was possessed of property, which was afterwards sold under executions, most of them subsequently obtained, for more than $40,000. He denies all fraud or combination with the defendants to induce the plaintiff to enter into the arrangement; but that it was his own voluntary choice.
The plaintiffs' claim to the interference of this Court is founded, not on the fact, that he has changed a security, which was substantial and valuable, for one that has proved illusory, but upon the alleged fact that he has been induced to do so by the fraudulent conduct of the defendants. We say the plaintiff, because we consider the administrator, Hayes, as a mere looker on, without interest in the ultimate result; for let this case eventuate as it may, the interest he represents is safe, as long as his co-plaintiff and his sureties are able to discharge the debt; provided at least the plaintiff, Christman, did not act bona fide. It is a question of loss between the plaintiff, Christman, and the defendant, Armstrong. At law Christman has no claim, and he can not expect this Court to deprive Armstrong of a defense which completely protects him; to take from his
shoulders a load which the law has placed there, without making out a clear case entitling him to equitable relief; and the only evidence in the case is the answers. *Page 436 
His equity is fully and completely denied, by the answers. This is not the case of a defendant bringing forward new facts to set up an equity in himself, to repel that of the plaintiff; but one where the answers deny the facts, upon which the whole equity of the bill rests. The answers expressly deny all fraud and combination and conspiracy to (553) impose on the plaintiff, or that it was at their instance the arrangement was made. And the defendant, Armstrong, denies that he concealed from the plaintiff anything concerning the matter, it was his duty to disclose; he denies that he knew anything of the existence of the judgments in Stokes and Rockingham. Nor indeed does it appear, by evidence, their were, at the time the new arrangement was made, any such judgments in existence. Looking into the case as presented by the bill and answers, it is not difficult to satisfy ourselves as to the real truth of the matter. The plaintiff did not wish to collect the money due his ward. If he did, he knew it would be necessary to loan it out again, as he was obliged to keep it out at interest. He concluded landed estate was better than personal security; and, in general, his reasoning would have been right; in this instance, it has proved fallacious. It is in the province and duty of a guardian to exchange one security for a debt due to his ward for another, which he deems better, and if the latter should fail, it is no ground for recurring to the parties bound in the former. He can not be permitted to resort to his old security, and thereby saddle Armstrong, who is but a surety, with the loss he must himself abide.
PER CURIAM. THE BILL DISMISSED WITH COSTS.
(554)